**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

---

PITAMBAR MAHATO NUNIYA,

     Petitioner,

v.                                                                                    No. 2:26-cv-00253-MLG-DLM

DORA CASTRO, Acting Warden, Otero County
Processing Center; Field Director for U.S.
Immigration and Customs Enforcement, El Paso
Field Office, United States Immigration and
Customs Enforcement; TODD M. LYONS, Acting
Director, United States Immigration and Customs
Enforcement; KRISTI NOEM, Secretary, U.S.
Department of Homeland Security; PAMELA
BONDI, U.S. Attorney General, in their official
capacities,

     Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND
DIRECTING RESPONDENTS TO RELEASE PETITIONER WITHIN 24 HOURS**

Petitioner Pitambar Mahato Nuniya, a citizen of Nepal, is detained at the Otero County

Processing Center in Chaparral, New Mexico. Doc. 1 ¶¶ 2-3. Mahato Nuniya entered the United

States on October 13, 2024, and was released the following day on his own recognizance pursuant

to 8 U.S.C. § 1226. *Id.* ¶¶ 4-5, 27. He was re-detained during a routine Immigration and Customs

Enforcement appointment on December 13, 2025. *Id.* ¶ 6. Mahato Nuniya alleges in his Verified

Petition for Writ of Habeas Corpus Pursuant to U.S.C. § 2241 ("Petition"), Doc. 1, that he did not

receive any pre-deprivation hearing prior to being re-detained. *Id.* ¶¶ 6, 33, 36. This lack of due

process, Mahato Nuniya argues, entitles him to immediate release because he acquired a liberty

interest in remaining free when he was initially released on his own recognizance. *Id.* ¶¶ 58-62.

1

In their Response, federal Respondents do not challenge the Petition's characterization of the facts. *See generally* Doc. 6. But they maintain that Mahato Nuniya is "subject to mandatory detention under § 1225(b) because he was present in the United States without being admitted or paroled."[1] Doc. 6 at 3. In advancing this argument, federal Respondents once again cite the Board of Immigration Appeals' ("BIA") opinion in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Doc. 6 at 3. The BIA's opinion is not binding on the Court, and the Court rejects the BIA's interpretation of the statutes for the same reasons articulated in its previous decisions on this matter. *See, e.g.*, *Cortez-Gonzales v. Noem*, No. 2:25-cv-00985, 2025 WL 3485771, at *5 (D.N.M. Dec. 4, 2025) ("This Court is not bound by the BIA's interpretation of the relevant statutes—particularly when the [interpretation] lacks sound legal foundation."); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("The views of the Executive Branch [may] inform the judgment of the Judiciary, but [do] not supersede it.").

The conclusion that Mahato Nuniya's detention is governed by § 1226[2] is bolstered by the fact that he was released by federal Respondents on his own recognizance pursuant to § 1226. *See* Doc. 1 at 30 (demonstrating that Mahato Nuniya was released on his own recognizance "in

---

[1] This contradicts federal Respondents factual summary of this case, in which they acknowledge that Mahato Nuniya was released on his own recognizance. *See* Doc. 6 at 1 ¶ 2 (citing to the Order of Release on Recognizance attached to Mahato Nuniya's Petition); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025) ("[T]he government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole").

[2] Federal Respondents agree that the Court's previous rulings on this issue control the outcome of this case because "the facts are not materially distinguishable for purposes of this Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *See* Doc. 6 at 4; *Cortez-Gonzales v. Noem*, No. 2:25-cv-00985, 2025 WL 3485771, at *3-5 (D.N.M. Dec. 4, 2025); *Diaz-Cruz v. Dedos*, No. 1:25-cv-01117, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025); *Gonzales Ramos v. Dedos*, No. 1:25-cv-00975, 2025 WL 3653928, at *2-5 (D.N.M. Dec. 17, 2025).

accordance with section 236 of the Immigration and Nationality Act" which is codified at § 1226); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025) ("[T]he government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole"); *see also Ramirez-Gavilan v. Collins*, No. 1:25-CV-2052-RP, 2026 WL 274705, at *5 (W.D. Tex. Jan. 17, 2026) ("[T]he government has already treated Petitioner as subject to § 1226 when they paroled him under that provision—a form of parole that would not have been possible if he was being detained subject to § 1225. That alone would be sufficient to say that Petitioner is wrongfully detained under § 1225 now.").

As Mahato Nuniya points out, the decision to release him on his own recognizance necessarily involved a factual determination that he was neither a flight risk nor a danger to the community. *See* Doc. 1 ¶ 28; *see also* 8 C.F.R. § 1236.1(c)(8) (explaining that a noncitizen may be released if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"). Federal Respondents do not dispute that Mahato Nuniya did not receive a pre-deprivation hearing, nor do they argue that Mahato Nuniya's parole was ever formally revoked. *See generally* Doc. 6.

Noncitizens released from immigration custody have a liberty interest in remaining free. *See, e.g.*, *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [they] will be re-detained only if [they] violate[] the conditions of [their] release." (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)), *appeal filed sub nom.*, *Garcia v. Albarran*, No. 25-7868 (9th Cir. Dec. 16, 2025). This Court recently addressed what process is "necessary to ensure any deprivations of that protected liberty interest

3

accords with the Constitution." *Diallo v. Orozco*, No. 2:26-cv-00066-MLG-JHR, 2026 WL 608746, at *3 (D.N.M. Mar. 4, 2026) (internal quotation marks omitted) (quoting *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025)). The *Mathews v. Eldridge*[3] balancing test guides this analysis. *See Diallo*, 2026 WL 608746, at *3-4. As in *Diallo*, the Court concludes that due process demands that Mahato Nuniya receive a pre-deprivation hearing because (1) Mahato Nuniya has a clear liberty interest in remaining out of custody; (2) the risk of erroneous deprivation under the procedures used here is high, and the probable value of additional procedural safeguards is considerable, given that Mahato Nuniya was re-detained long before federal Respondents presented any valid legal basis to justify his civil detention; and (3) federal Respondents' interest in detaining Mahato Nuniya is low because they previously determined that he is neither a flight risk nor a danger to the community, and the cost of a pre-deprivation hearing is minimal. *See id.*; *see also Pablo Sequen*, 806 F. Supp. 3d at 1082-90.

Mahato Nuniya did receive a post-deprivation bond hearing approximately six weeks after being re-detained. *See* Doc. 1 at 49. At the hearing, the immigration judge found that if they had jurisdiction to grant bond, they would deny it because Mahato Nuniya is a flight risk. *Id.* Although there are circumstances in which "a meaningful postdeprivation hearing is adequate[,]" to satisfy due process, federal Respondents do not argue that this case presents such a situation. *See, e.g.*, *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999) ("Although normally a property owner is entitled to a predeprivation hearing, where, as in this case, the state must act quickly, a meaningful postdeprivation hearing is adequate."). Absent any explanation from federal Respondents as to why Mahato Nuniya's post-deprivation hearing provided adequate process, the

---

[3] 424 U.S. 319, 335 (1976).

Court is unable to conclude that the post-deprivation bond hearing cured the due process violation that occurred when Mataho Nuniya was re-detained in December 2025 without any process and then held unlawfully pursuant to § 1225. *See* Doc. 6 at 3. "Such a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified) (ordering a petitioner's release after concluding that a post-deprivation bond hearing would be "inadequate to address the denial of due process that [the petitioner] was entitled to in the first instance"); *see also Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) ("[A] post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out.")

Accordingly, because Mahato Nuniya did not receive a pre-deprivation hearing, *see* Doc. 1 ¶¶ 6, 33, 36, his detention is an ongoing violation of his right to due process. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). The Petition is therefore granted in part, and Mahato Nuniya shall be immediately released. *See, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful executive] detention is, of course, release.").

Additionally, the Court will consider Mahato Nuniya's request for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). *See* Doc. 1 at 16; *Delay v. Ceja*, 158 F.4th 1152,

5

1166 (10th Cir. 2025) ("[W]e read the EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention."). "Under [the] EAJA, a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)). Mahato Nuniya must "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and demonstrate that "the position of the United States was not substantially justified." § 2412(d)(1)(B). Respondents must then justify their position. *See Hackett*, 475 F.3d at 1170.

1. Respondents must release Mahato Nuniya from custody, subject to the conditions of his parole, within twenty-four hours of this Order's filing.

2. Upon Mahato Nuniya's release, Respondents must return all his property, including any identification and immigration documentation, that was in his possession when he was detained.

3. Federal Respondents must file a status report within three days of this Order's filing to certify their compliance. The status report shall state when and where Mahato Nuniya was released.

4. Federal Respondents may not re-detain Mahato Nuniya without conducting a pre-deprivation hearing before a neutral immigration judge during which they must show by clear and convincing evidence that Mahato Nuniya is a flight risk or a danger to the community, and that no conditions other than his detention would be

sufficient to alleviate such concerns.[4] Federal Respondents must notify Mahato Nuniya seven days in advance of any such hearing.

5. Mahato Nuniya shall promptly report to the Court any failure on Respondents' part to comply with this Order.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

[4] *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1240-46 (D.N.M. 2025) (concluding that, where the petitioner had "been unlawfully detained without due process in violation of his constitutional rights[,]" the appropriate remedy was "shifting the burden to the Government to prove, by clear and convincing evidence, that [the p]etitioner is at risk of flight and/or a danger to the community such that continued detention is necessary").